IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIONEL NAVARRO, | No. CIV S-06-1531-CMK-P |
| Petitioner, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| ROBERT AYERS, et al., | |
| Respondents. | |
| _____/ | |

    Petitioner, a state prisoner proceeding with appointed counsel, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the denial of parole in June 2005.  Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment.  See 28 U.S.C. § 636(c). Pending before the court are petitioner's pro se petition for a writ of habeas corpus (Doc. 1), respondents' answer (Doc. 15), petitioner's supplemental brief filed by appointed counsel (Doc. 24), respondents' supplemental brief (Doc. 26), petitioner's traverse filed by appointed counsel (Doc. 28), petitioner's request for judicial notice (Doc. 29), petitioner's second supplemental brief filed by appointed counsel (Doc. 31), and respondents' request for a stay of proceedings (Doc. 32).

# I. BACKGROUND

Petitioner is serving a life sentence following his conviction for first degree murder. Petitioner appeared before the Board of Prison Terms ("Board") for a subsequent parole eligibility hearing in June 2005. Petitioner was represented by counsel at the hearing. In denying parole, the Board relied on the following: (1) the facts of the commitment offense; (2) an escalating pattern of criminal conduct; and (3) the need for further self-help programming. As to self-help programming, the Board stated:

> . . . The prisoner needs therapy, programming, and self-help in order to face, discuss, understand, and cope with the stress in a non-destructive manner as well as to go further into the commitment crime to get further insight into the commitment crime. . . . Primarily the area of unsuitability that brings us to the forefront is this whole area of your AA and NA. And though you've – there's no question you've attended them, but amazingly you don't participate in it. You just sit in back and like you way you never got past the, number one on, on it. You do need to participate in it. This crime was drug based and you need to show the Panel at some point in time if you want to, ever want to get released that not only that you made up the reasons to get out of that drug lifestyle, but that you have a way of community, whatever you want to call it, to fall back on in case your willpower falters. That's the whole point of AA and NA is to be able to, to have help when necessary. I perfectly believe that you think that you don't need it. That once you way you're not going to do something, you're not gonna do it. But a lot of people feel that way and they end up falling back. And that's the reason why NA and AA is so popular because you've got to have that net to kind of help you ought to keep you from (indiscernible) and because of your track record. . . .

The Board deferred further consideration for parole eligibility for two years.

Petitioner filed a habeas corpus petition in the Tulare County Superior Court challenging the Board's decision. In denying relief, the state court concluded that the Board did not rely solely on immutable factors and that the Board's reliance on petitioner's failure to participate meaningfully in self-help programming constituted "some evidence" to justify the denial of parole. The California Court of Appeal and California Supreme Court summarily denied relief. Respondents concede the petition is timely and that the claims are exhausted.

///

///

## II. STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998). The AEDPA does not, however, apply in all circumstances. When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo. See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner). When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist." Pirtle, 313 F. 3d at 1167.

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d)(1), federal habeas relief is available only where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. Under both

standards, "clearly established law" means those holdings of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams, 529 U.S. at 412) . "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts." Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en banc). Supreme Court precedent is not clearly established law, and therefore federal habeas relief is unavailable, unless it "squarely addresses" an issue. See Moses v. Payne, 555 F.3d 742, 753-54 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 28 S. Ct. 743, 746 (2008)). For federal law to be clearly established, the Supreme Court must provide a "categorical answer" to the question before the state court. See id.; see also Carey, 549 U.S. at 76-77 (holding that a state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice created by state conduct at trial because the Court had never applied the test to spectators' conduct). Circuit court precedent may not be used to fill open questions in the Supreme Court's holdings. See Carey, 549 U.S. at 74.

In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards. A state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. See id. at 405. A state court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases. See id. In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court cases to the facts of a particular case is not reviewed under the "contrary to" standard. See id. at 406. If a state court decision is "contrary to" clearly established law, it is reviewed to determine first whether it resulted in constitutional error. See Benn v. Lambert, 283 F.3d 1040,

1052 n.6 (9th Cir. 2002). If so, the next question is whether such error was structural, in which case federal habeas relief is warranted. See id. If the error was not structural, the final question is whether the error had a substantial and injurious effect on the verdict, or was harmless. See id.

State court decisions are reviewed under the far more deferential "unreasonable application of" standard where it identifies the correct legal rule from Supreme Court cases, but unreasonably applies the rule to the facts of a particular case. See Wiggins v. Smith, 539 U.S. 510, 520 (2003). While declining to rule on the issue, the Supreme Court in Williams, suggested that federal habeas relief may be available under this standard where the state court either unreasonably extends a legal principle to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. See Williams, 529 U.S. at 408-09. The Supreme Court has, however, made it clear that a state court decision is not an "unreasonable application of" controlling law simply because it is an erroneous or incorrect application of federal law. See id. at 410; see also Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003). An "unreasonable application of" controlling law cannot necessarily be found even where the federal habeas court concludes that the state court decision is clearly erroneous. See Lockyer, 538 U.S. at 75-76. This is because "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Id. at 75. As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless unavailable if the error was non-structural and harmless. See Benn, 283 F.3d at 1052 n.6.

///
///
///
///
///
///

### III.  DISCUSSION

Petitioner argues that California's parole statute is unconstitutionally vague with respect to the commitment offense and previous record.  Petitioner also argues that the Board's decision was not based on "some evidence" of his dangerousness at the time of the eligibility hearing in 2005.  Respondents argue: (1) petitioner does not have a federally protected liberty interest in parole; (2) petitioner received all the process he was due because he was provided notice of the hearing and an opportunity to be heard; (3) even if the "some evidence" standard applies, the factors cited by the state court meet this standard.

In Hayward v. Marshall, 603 F.3d 546 (9th Cir. 2010) (en banc), the Ninth Circuit sitting en banc held that there is no federal stand-alone substantive due process right to parole. See 603 F.3d 546, 555 (9th Cir. 2010) (en banc).  Any substantive due process interest in parole arises solely from state law creating the right.  See id.  The Ninth Circuit overruled its prior decisions in Biggs v. Terhune, 334 F.3d 910, 915 (9th Cir. 2003), Sass v. Bd. of Prison Terms, 461 F.3d 1123 (9th Cir. 2006), and Irons v. Carey, 505 F.3946, 851 (9th Cir. 2007), "[t]o the extent [they]. . . might be read to imply that there is a federal constitutional right regardless of whether state law entitles the prisoner to release. . . ."  Hayward, 603 F.3d at 555.

Turning to whether California's parole scheme creates any substantive due process rights, the Ninth Circuit stated: "Although the due process clause does not, by itself, entitle a prisoner to parole in the absence of some evidence of future dangerousness, state law may supply a predicate for that conclusion." Id. at 561.  The court then discussed California law, including the California Supreme Court's decisions in In re Lawrence, 44 Cal.4th 1181 (2008), and In re Shaputis, 44 Cal.4th 1241 (2008), and noted that ". . . as a matter of state law, 'some evidence' of future dangerousness is indeed a state *sine qua non* for denial of parole in California." Id. at 562.  The court then provided the following instructions for resolving parole

///

///

claims in the context of AEDPA:

> Since the "some evidence" requirement applies without regard to whether the United States Constitution requires it, we in this case, and courts in this circuit facing the same issue in the future, need only decide whether the California judicial decision approving the . . . decision rejecting parole was an "unreasonable application" of the California "some evidence" requirement, or was "based on an unreasonable determination of the facts in light of the evidence."

Id.

The en banc court concluded that Hayward had properly been denied parole because the nature of the commitment offense combined with an unfavorable psychological evaluation provided "some evidence" under California law of future dangerousness. See id.

Interpreting the en banc decision in Hayward, the Ninth Circuit in Person v. Muntz stated: "By holding that a federal habeas court may review the reasonableness of the state court's application of the 'some evidence' rule, Hayward, necessarily held that compliance with the state requirement is mandated by federal law, specifically the Due Process Clause." 606 F.3d 606, 609 (9th Cir. 2010) (per curiam). The court observed that "[t]he principle that state law gives rise to liberty interests that may be enforced as a matter of federal law is long-established." Id.

As has been clearly stated by the Ninth Circuit, California law provides the contours of the substantive due process right to parole at issue in this case. Under California law, one year prior to an inmate's minimum eligible parole release date, the Board will set a date for an eligibility hearing. See Cal. Penal Code § 3041(a). A release date shall be set unless release currently poses an unreasonable risk of danger to society. See Cal. Penal Code § 3041(b). The paramount concern in determining parole suitability in California is public safety. See In re Dannenberg, 34 Cal.4th 1061 (2005). This requires an assessment of the inmate's current dangerousness. See In re Lawrence, 44 Cal.4th at 1205. Such an assessment requires more than "rote recitation of the relevant factors with no reasoning establishing a rational nexus between those factors and the necessary basis for the ultimate decision – the determination of current

dangerousness." Id. at 1210.

California regulations set forth various circumstances which tend to show suitability and others which tend to show unsuitability. See Cal. Code Regs., tit 15 § 2402(c)-(d). Under § 2402(c), circumstances tending to show unsuitability include: (1) the facts of the commitment offense, where the offense was committed in an especially heinous, atrocious, or cruel manner; (2) the prisoner's previous record of violence; (3) a history of unstable relationships with others; (4) commission of sadistic sexual offenses; (5) a lengthy history of severe mental problems related to the offense; and (6) serious misconduct while in prison. Circumstances tending to show suitability include: (1) lack of a juvenile record; (2) reasonably stable relationships with others; (3) the prisoner has shown remorse; (4) lack of significant history of violent crimes; (5) realistic plans for release; and (6) participation in institutional activities indicating an enhanced ability to function within the law upon release. See Cal. Code Regs., tit. 15 § 2402(d). The regulations are designed to guide the Board's assessment regarding whether the inmate poses an "unreasonable risk of danger to society if released from prison," and thus whether he or she is suitable for parole. In re Lawrence, 44 Cal.4th at 1202. There must be a rational nexus between the facts cited by the Board and the ultimate conclusion on dangerousness. See id. at 1227.

Regarding reliance on the facts of the commitment offense, the denial of parole may be predicated on the commitment offense only where the Board can point to factors beyond the minimum elements of the crime that demonstrate that, at the time of the suitability hearing, the inmate will present an unreasonable risk of danger to society if released. See In re Dannenberg, 34 Cal.4th at 1071. While the Board cannot require an inmate to admit guilt in order to be found suitable for parole, see Cal. Penal Code § 5011(b); 15 Cal Code Regs., tit. 15, § 2236, the Board must consider the inmate's past and present attitude toward the crime and any lack of remorse or understanding of the nature and magnitude of the offense, see 15 Cal. Code Regs., tit. 15, §§ 2402(b), 2402(d)(3). "Lack of insight" is probative of unsuitability only to the

extent that it is both demonstrably shown by the record and rationally indicative of the inmate's current dangerousness.  See In re Calderon, 184 Cal.App.4th 670, 690 (2010).

In light of the precedents outlined above the court concludes that petitioner has a protected liberty interest in parole arising from state law.  The court also concludes that the contours of the substantive guarantee required to protect that liberty interest are defined by state law and that under California law parole may not be denied unless there is "some evidence" of the inmate's dangerousness at the time of the parole eligibility hearing.  Respondents' arguments to the contrary are rejected.

As to self-help programming, petitioner outlines the following history:

> Though Navarro has never been diagnosed with a mental illness, he has participated in self-help and therapy programs throughout his entire term in custody.  Navarro was involved in both group and individual therapy.  Navarro completed a year of group therapy in 1988.  He was also in the Cat T program at CMF, and prior to that he had approximately three years of individual psychotherapy, ending in 1985.
> Since then, Navarro has focused upon his past problems with substance abuse.  In this respect, Navarro began participating an Alcoholics Anonymous (AA) in 1987 and Narcotics Anonymous (NA) in 1988.  He has continued his involvement with NA during the course of his time in custody and plans to remain in NA upon his release.

Petitioner argues:

> An accurate review of the record reveals that Navarro has been an active participate in several self-help programs since 1988.  Through out the 27 years in custody, Navarro has participated in individual and group therapy, AA and NA.  Moreover, over the years Navarro has received laudatory chronos from his participation in AA and NA.  He continues to attend NA and plans to attend NA upon his release.
>
> * * *
>
> The record of Navarro's institutional programming is significant and overwhelmingly supportive of release.  The Board's finding of insufficient institutional gains is an affront to Navarro's record and completely unsupported by evidence. . . .

While the record confirms petitioner's statements that he has participated in AA and NA since the late 1980s, the record also shows that his participation was not very meaningful. At the 2005 parole hearing, petitioner states that at first he attended AA/NA "for the

1  chronos." According to petitioner, he then started listening and "I just continued going." Then
2  the following exchange took place:

      Q:      And have you worked through the 12 steps?

      A:      No.

      Q:      How far'd you get so far? I mean, well you've been in it now 15 years.

      A:      Well, I never worked the steps. I just go and listen and get out, get out what I listen. I don't, I know on Step One I'm a, I'm an addict.

      Q:      So that's one. So you've gone through one step.

      A:      Through one step. I've never worked the steps, but I do –

      Q:      Did you ever think – that one that always intrigues me is, is eight to make a moral inventory. Never did that?

      A:      No.

      Q:      Never made a list of anyone you might have offended?

      A:      Nah.

      Q:      No?

      A:      Too many.

      Q:      There's a lot of paper in this prison.

      A:      Yeah.

      Q:      So how do I know that if some Panel ever gave you a date that you wouldn't hit the street and hit a bar and a drug dealer first off?

      A:      Is you wouldn't know. I mean, I know I wouldn't.

      * * *

      Q:      Do you say anything at NA meeting?

      A:      Nay, not really. Like I said, I more of a listener, always listening.

25  This exchange shows, by petitioner's own admission, that his "participation" in AA/NA merely
26  consisted of listening. As the Board observed, such "participation" in not particularly

meaningful given that the point of self-help is to encourage the individual to explore his or her problems. One way to accomplish this is through the 12-step process, which petitioner admitted to the Board he had not done. The court finds that petitioner's admitted lack of meaningful participation in AA/NA constituted some evidence supporting the denial of parole. The lack of meaningful participation is shown by the record. Furthermore, there is a reasonable relationship between the lack of meaningful participation in AA/NA and the risk of danger given petitioner's statement that he is an addict.

### IV.  CONCLUSION

Addressing petitioner's request for judicial notice, the court finds that the request is moot. According to petitioner, the court should judicially notice evidence relating to parole hearing which occurred subsequent to the parole hearing at issue in this case and that such material "is relevant to the issue of remedy. . . ." Because the court finds that relief is not warranted, the court does not reach the issue of remedy. For this reason, it is not necessary to take judicial notice as requested.

Pursuant to Rule 11(a) of the Federal Rules Governing Section 2254 Cases, the court has considered whether to issue a certificate of appealability. Before petitioner can appeal this decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). Where the petition is denied on the merits, a certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court must either issue a certificate of appealability indicating which issues satisfy the required showing or must state the reasons why such a certificate should not issue. See Fed. R. App. P. 22(b); but see Woods v. Carey, 525 F.3d 886 (9th Cir. 2008) (citing White v. Lambert, 370 F.3d 1002, 1010 (9th Cir. 2004), and suggesting that a certificate of appealability is not required in cases where petitioner challenges the denial of parole). Where the petition is dismissed on procedural grounds, a certificate of

appealability "should issue if the prisoner can show: (1) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling'; and (2) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right.'" Morris v. Woodford, 229 F.3d 775, 780 (9th Cir. 2000) (quoting Slack v. McDaniel, 529 U.S. 473, 120 S.Ct. 1595, 1604 (2000)). For the reasons set forth above, the court finds that issuance of a certificate of appealability is not warranted in this case.

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's request for judicial notice (Doc. 29) is denied;

2. Petitioner's petition for a writ of habeas corpus (Doc. 1) is denied;

3. No certificate of appealability shall issue;

4. Respondents' request for a stay of proceedings (Doc. 32) is denied as moot; and

5. The Clerk of the Court is directed to enter judgment and close this file.

DATED: August 25, 2010

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE